conversation with one of the plaintiffs, in the course of which Blum said that the market conditions had not been satisfactory; that the goods, which were contained in cases, were then intact, and he asked plaintiffs to take back one of the cases, in which event, he said, defendants would pay for the other. Plaintiffs refused this offer, and thereupon Blum unrolled one of the pieces and said that the material looked imperfect, but, if the goods were right, defendants would have to pay for them, and he would have them examined. The precise time necessary for an examination of the goods contained in the two cases did not appear, but sufficient did appear to show that it was but brief. On the day of the foregoing conversation, or the day after, plaintiffs commenced this action, and within a few days thereafter defendants sent the goods to examiners, who pronounced them imperfect and not of first quality. There was no offer to return the goods until defendants served their answer.

It is apparent from the foregoing that, notwithstanding a reasonable time had elapsed, between the delivery of the goods and the conversation above referred to, to permit of an examination of the goods, and for their rejection, had they been found not to conform to the sample, defendants made no attempt to examine and made no offer to return. So far as the breach of warranty constituted a defense, it was waived by the failure to return or offer to return the goods within a reasonable time. Nash v. Weidenfeld, 41 App. Div. 511, 58 N. Y. Supp. 609, affirmed 166 N. Y. 612, 59 N. E. 1127; Personal Property Law (Consol. Laws, c. 41) art. 5, § 150, as added by Laws 1911, c. 571. The only right which survived defendants' acceptance of the goods was one for damages (Id.), which was the cause of action asserted in the counterclaim. But the difficulty with this feature of defendants' case is that there was no proof that they suffered any damage. Such testimony as defendants offered on this point was to the effect that the goods had risen in value.

The determination of the Appellate Term and the judgment of the Municipal Court should be reversed, with costs, and judgment entered for the appellants for the sum demanded in the complaint, with interest, besides costs in the Municipal Court and at the Appellate Term. All concur.

---

HOEVEL SAND-BLAST MACH. CO. v. HOEVEL et al. (No. 7153.)

(Supreme Court, Appellate Division. First Department. May 7, 1915.)

1. CORPORATIONS ⊂⊃648—FOREIGN CORPORATIONS—RIGHT TO SUE—FAILURE TO OBTAIN CERTIFICATE—INJUNCTION.

Under General Corporation Law (Consol. Laws, c. 23) § 15, requiring a foreign corporation to obtain a certificate of authority to do business within the state, and providing that no such corporation shall maintain any action in the state or any contract made by it in the state, unless prior to the making of the contract it procured such certificate, and Tax Law (Consol. Laws, c. 60) § 181, requiring the payment of a tax by a corporation securing such certificate, the failure of a foreign corporation to comply with the requirements of those sections until after a domestic corporation of the same name had been formed, does not preclude its

⊂⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

right to sue to restrain a domestic corporation from using the name of the foreign corporation in unfair competition.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 2516; Dec. Dig. ☞648.]

2. CORPORATIONS ☞648—UNFAIR COMPETITION—INJUNCTION.

Where the former president of a foreign corporation, who was principally responsible for the failure of the company to obtain a certificate of authority to do business in the state, organized a domestic corporation to compete with the foreign corporation, and adopted the same name, the foreign corporation is entitled to an injunction against the use of that name by the domestic corporation.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 2516; Dec. Dig. ☞648.]

Appeal from Special Term, New York County.

Action by the Hoevel Sand-Blast Machine Company against Herman F. Hoevel and another. From an order denying an injunction during the pendency of the action, the plaintiff appeals. Reversed, and injunction granted.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

Emil Breitenfeld, of New York City, for appellant.
Hugh Gordon Miller, of New York City, for respondents. .

McLAUGHLIN, J. The plaintiff is a Delaware corporation, and for something like two years has been engaged in selling sand-blast machines, having a place of business at 50 Church street, New York City. Up to April 25, 1914, the defendant Hoevel was president of the plaintiff, but about that time he resigned, and severed his connection with the company by selling all of his stock. Shortly thereafter he organized the defendant corporation to engage in a business similar to the plaintiff's and having its principal place of business at 50 Church street, New York City. At the time of the commencement of this action the plaintiff had not procured a certificate from the state of New York, as provided in section 15 of the General Corporation Law, authorizing it to do business in such state, nor paid the tax provided in section 181 of the Tax Law. After the defendant was incorporated, however, it applied to the secretary of state for a certificate, which was refused for the reason that its name was similar to that of the defendant corporation. This action was then commenced to restrain the defendant corporation from using its name and compelling it to take the necessary steps to change it, by eliminating the words "Hoevel Sand-Blast Machine Company." Upon the complaint and affidavits a motion was made to enjoin the defendants, during the pendency of the action, from doing business under the name of the defendant corporation. The motion was denied, upon the ground that the plaintiff had failed to comply with section 15 of the General Corporation Law and section 181 of the Tax Law. Plaintiff appeals.

[1] I am of the opinion the motion should have been granted. As I read the sections of the statute referred to, there is nothing in either which prevents an action of this kind being maintained. Section 15 is

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

to the effect that a foreign corporation, other than a moneyed corporation, shall not do business in the state of New York until it has first procured a certificate from the secretary of state authorizing it to do so, and that:

"No foreign stock corporation doing business in this state shall maintain any action in this state upon any contract made by it in this state, unless prior to the making of such contract it shall have procured such certificate."

This is not an action upon contract, nor is it to obtain relief by reason of any business transacted by it in the state of New York. Section 181 has no application, because that relates to the tax to be paid after the certificate has been issued. In addition to this, the neglect to pay the tax assessed is a matter of defense, which must be alleged in an answer. Halsey v. Jewett Dramatic Co., 190 N. Y. 231, 83 N. E. 25, 123 Am. St. Rep. 546.

[2] There are numerous authorities to the effect that a corporation may restrain, by injunction, the use of its corporate name by another, on the ground that such use constitutes unfair competition. Chas. S. Higgins Co. v. Higgins Soap Co., 144 N. Y. 462, 39 N. E. 490, 27 L. R. A. 42, 43 Am. St. Rep. 769; Metropolitan Telephone & Telegraph Co. v. Metropolitan Telephone & Telegraph Co., 156 App. Div. 577, 141 N. Y. Supp. 598. The papers used upon the motion clearly indicate that the defendant Hoevel organized the defendant corporation for the purpose of entering into competition with the plaintiff, and he did so under the name which he took because he knew that the plaintiff had not obtained the certificate required authorizing it to do business in the state of New York. The fact that it had not obtained such certificate was principally due to his own neglect while acting as its president. I think, upon the proofs presented, the motion should have been granted.

The order appealed from, therefore, is reversed, with $10 costs and disbursements, and the motion granted, with $10 costs, order to be settled on notice. All concur.