248 S.W.2d 49 (1952)
STATE ex rel. DUNBAR et al.
v.
HOHMANN et al.
No. 28298.
St. Louis Court of Appeals. Missouri.
April 15, 1952.
*50 Edward W. Tobin, Edward A. Haid, St. Louis, for appellants.
Thomas Rowe Schwarz and Dunbar & Curby, all of St. Louis, for respondents.
WOLFE, Commissioner.
The relators in this action sought a writ of mandamus commanding the respondents to declare that James V. Dunbar had been elected a director of the Sieloff Packing Company. It was alleged in relators' petition that Dunbar had been elected on June 8, 1949, to serve as one of the corporate directors for a term of one year. Respondents Hohmann and Sieloff were respectively chairman and secretary of the stockholders' meeting when the disputed election took place. They had declared that Wilfred Schriefer had been elected and so recorded the results of the election. The relators sought an order directing them and the other respondents to declare that James V. Dunbar had been elected and a further order that the corporate records be changed to reflect the declaration sought. An alternative writ was issued, to which a return was filed, and the relators replied. In October, 1949, the issues thus raised were tried. On January 11, 1951, a peremptory writ of mandamus was issued, and the respondents below now prosecute this appeal.
The election which gave rise to this controversy was held in accordance with a notice to the stockholders which stated that the meeting was called for nine o'clock on the morning of June 8. The specific purposes for the meeting were set out. One of these was the election of five directors for the ensuing year and another dealt with the matter of amending the corporation bylaws so as to change the date of the annual stockholders' meeting from the second Wednesday in June to the first Wednesday in February. The notice provided that the polls would remain open until twelve noon.
George H. Hohmann was chairman of the meeting and a Mr. Haverstick and a Mr. Farrell were the appointed and qualified inspectors of the votes. There were only about ten persons present at the meeting but a number of proxies were held by some of those in attendance. The proxies were presented to the inspectors and votes were cast from about ten o'clock on throughout the morning, with the largest number of them being cast between eleven and twelve o'clock. Harry C. Bass, Jr., one of the relators, waited for some proxies to be brought to him from his office. They were delivered to him at the meeting around 11:30 and shortly before 12:00 o'clock he presented them to the inspectors. The inspectors checked the proxies against the stockholders' list. The checking of the proxies took some time, but at 12:25 it was done and Mr. Bass was given a ballot. He then marked his ballot and returned it to the inspectors at 12:29 p. m. During this checking and the voting by Bass there was some discussion between the inspectors and the company's attorney as to Bass' right to vote after twelve o'clock. The inspectors felt that due to the time required to check the proxies the polls should remain open until Bass had voted. They received his ballot and orally reported to the meeting that the results of the election were as follows:
George H. Hohmann 33,331 votes
Carl J. Zeitler 33,331 "
Frank L. Sieloff 33,328 "
James V. Dunbar 20,500 "
Harry C. Bass, Jr. 20,075 "
Wilfred Schriefer 5 "
 _______
 140,570
They stated that the ballot of Mr. Bass was not signed and that it had been cast after twelve noon. The chairman then ruled that Bass' votes for Mr. Dunbar could not be counted and declared that Wilfred Schriefer had been elected.
The inspectors later sent to Hohmann, the chairman, a written report showing the vote as tabulated above, but he returned it to them directing them by letter to forward a "correct" report at once.
It was shown by the inspectors that Bass had cast the unsigned ballot and the proxies that he presented checked with the number of votes that he cast.
The bylaws and minutes of the corporation were in evidence and will be discussed as they relate to the points raised.
*51 Upon this evidence the court issued the peremptory writ of mandamus which directed the respondents to expunge from the minutes of the corporation the declaration that Schriefer had been elected at the meeting of June 8, 1949, and to enter in the minutes a declaration that James V. Dunbar had been elected.
One of the points raised has to do with the pleadings. The appellants state that since the respondents filed a return which put in controversy the averments of the relators' petition the reply of the relators did not sufficiently conform with the statute, and that the court should have quashed its alternative writ. The statute is Missouri Revised Statutes, 1949, Section 529.020, V.A.M.S., which is as follows:
"When any writ of mandamus shall be issued, and return shall be made thereto, the person suing out or prosecuting such writ shall plead to or traverse all or any of the material facts contained in such return."
The reply filed not only categorically traversed every material allegation of the return but made additional statements in negation. We are not informed by the briefs of counsel in what respect they consider the reply insufficient, but we gather from the transcript of their objections below that they thought it necessary for the relators to restate in their reply the allegations contained in their petition. However, such is not the requirement of the statute and the reply was in all respects sufficient.
It also is contended by the appellants that a writ of mandamus should not have issued because it is a writ available only to those who have a clear and explicit right that they seek to enforce and that the right must be in no way dependent upon the discretion of the respondents. On this point there can be no dispute, for the writ will not lie to establish a legal right, but its office is to enforce one that has already been established. State ex rel. and to Use of Crites v. Short, 351 Mo. 1013, 174 S.W. 2d 821; State ex rel. Schulz v. Fogerty, Mo.App.; 195 S.W.2d 908; State ex rel. Huskey v. Eversole, Mo.App., 177 S.W.2d 654. If Dunbar was elected he had a clear legal right to the office and both he and Bass had an unqualified right to have the minutes of the corporation properly disclose the true result of the election. Mandamus, under such circumstances, would be the proper remedy. In Missouri it has been employed in cases relating to public elections to compel proper certification of election returns. State ex rel. Broadhead v. Berg, 76 Mo. 136; State ex rel. Ford v. Trigg, 72 Mo. 365; State ex rel. Metcalf v. Garesche, 65 Mo. 480. We see no reason why it would not be applicable to a corporation election. It has been so employed in other jurisdictions. State ex rel. Willis v. General Longshore Workers, 202 La. 277, 11 So.2d 589; Lenc v. Zicha, 223 App.Div. 158, 227 N.Y.S. 704; Gentry-Futch Co. v. Gentry, 90 Fla. 595, 106 So. 473. Discussing the use of the writ, it is stated in State ex rel. Blackwood v. Brast, 98 W.Va. 596, 127 S.E. 507, 510: "It is undoubted that, where the title is undisputed or clear, mandamus will lie to deliver or restore an office in a corporation to a person entitled thereto." The fact that Dunbar received 20,500 votes is unquestioned, and if they were properly cast for him he was elected and clearly entitled to be a director.
Missouri Revised Statutes, 1949, Section 351.235, V.A.M.S., states that, if the bylaws of a corporation provide, the person presiding at the meeting for the election of directors shall appoint not less than two persons, who are not directors, inspectors to receive and canvass the votes given at such meeting. It is provided that the inspectors shall certify the results to the presiding officer. The bylaws of the corporation did provide for inspectors. When results are properly certified by the inspectors to the chairman, he has no right to reject or alter the returns made.
The fact that one of the ballots was cast shortly after the time for closing the polls by a stockholder who had presented himself to vote before the closing time and who was in the process of voting does not invalidate the votes so cast. As stated in 19 C.J.S., Corporations, § 720, page 48:
"In the exercise of a reasonable discretion and for the purpose of enabling stockholders present and offering to *52 vote to do so, the inspectors of an election of directors may keep the polls open beyond the hour named in the notice or limited by the board."
It has in fact been held where there were numerous stockholders desiring to vote that it was not improper for the polls to have been kept open for six hours after the time for closing specified in the notice of the meeting. Clopton v. Chandler, 27 Cal. App. 595, 150 P. 1012. We therefore conclude that the mere fact that Bass' ballot was cast after twelve noon in no way invalidated it.
The ballot was unsigned and it is maintained that for this reason it should not have been counted. There is no statute requiring such ballots to be signed and no provision in the bylaws requiring it. The inspectors saw Bass mark his ballot and knew it was his when they received it, so for this reason it was properly cast and valid. There was some effort to show that the voting of Bass was contrary to the established practice and custom of the corporation, but there was no proof of any practice or custom contrary to the procedure adopted at the election, since no situation similar to that which arose at the meeting had ever occurred before.
The appellants contend that since the term for which the directors were elected expired on February 7, 1950, while the court had the case under consideration, the whole matter became moot before it was passed upon. It is asserted that because of this the court should have dismissed the case, and we are urged to reverse the judgment and remand the cause with directions to dismiss it. It is true that where no justiciable controversy is actually present between the parties to a suit the question is then moot, and should be dismissed, for, as our Supreme Court said in State ex rel. Chilcutt v. Thatch, 359 Mo. 122, 221 S.W.2d 172, loc. cit. 176, "If it appears plaintiff can have no relief against defendant, defendant should not be forced into litigation which can have no possible final result in favor of plaintiff." It is likewise evident that a cause may become moot by the act of the defendant in fully complying with the plaintiff's demands prior to the determination of the case. State ex rel. Myers v. Shinnick, Mo.Sup., 19 S.W.2d 676. This case, however, cannot fall within either category, for part of the relief the stockholders sought to obtain was to have the corporation minutes corrected to truly reflect the results of the election which was held. This was an unquestionable right to which they are still entitled. There has been no suggestion that the requested relief has been obtained for their right to it is still contested and the minute books show no change. In contending that the passage of time has made the matter moot, the appellants rely upon the language in the cases of Corken v. Workman, 231 Mo.App. 121, 98 S.W.2d 153, and Hurtgen v. Gasche, Mo.App., 227 S.W.2d 494. Both of these cases involve injunctions wherein the time for performing the act sought to be enjoined had elapsed and the courts held that the questions had become moot because an injunction could afford no remedy for that which is past.
In Burke v. Coleman, 356 Mo. 594, 202 S.W.2d 809, 810, our Supreme Court discussed the question of a case becoming moot by passing time. The revocation of a liquor license was involved and the licensee sought to have it restored. The term of the original license had expired before the case was submitted on appeal, and the court stated:
"But the doctrine of moot case is not inexorably applicable merely because of the court's inability to act upon an expired license. The force of other considerations, especially in present day administrative procedure, may be so great as to compel an adjudication upon the merits, despite the ineffectiveness of the judgment with respect to the immediate controversy."
The court was discussing short term administrative orders, where the right of judicial review would be denied if there was an inflexible application of the doctrine of moot case. The same logic applies to this case, for the relators certainly had a cause of action when they promptly brought their suit. The element of time was then present, for as the matter was brought to issue and tried part of the term for which Dunbar *53 had been elected was passing. Through no fault of the relators all of the term had long passed when the peremptory writ was finally issued, but there did remain their right to have the corporate minutes state the true results of the election. The matter was not moot to the extent that there were no presently existing issues left to pass upon, and although full redress could no longer be granted that alone did not require a dismissal of the case.
For the reasons stated, it is the recommendation of the Commissioner that the judgment be affirmed.
PER CURIAM.
The foregoing opinion of WOLFE, C., is adopted as the opinion of the court.
The judgment of the circuit court is accordingly affirmed.
BENNICK, P. J., and ANDERSON and HOLMAN, JJ., concur.